```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
LEO HOLMES,
                    Plaintiff,              04-CV-6443T

v.                                           DECISION
                                             and ORDER
JOANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Leo Holmes ("Holmes") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), terminating his Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On September 9, 2004 plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On June 17, 2005, the Commissioner cross-moved for judgment on the pleadings.

For the reasons that follow, the case is remanded to the Secretary for further consideration pursuant to 20 C.F.R. § 404.983. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is denied.

## BACKGROUND

Plaintiff applied for disability benefits on May 19, 1992 claiming that he was unable to work due to stress, headaches, back

pain, pancreas disorder, impaired vision, diabetes, alcoholism and drug addiction. (Tr. 73, 79) By Determination dated January 12, 1993, plaintiff was awarded benefits based on alcoholism and substance abuse. (Tr. 368)

By Notice dated February 29, 1996, the Social Security Administration informed plaintiff that his disability and SSI benefits would cease as of April 30, 1996 because his health had improved since the case was last reviewed. (Tr. 80, 82-84) On May 9, 1996, Holmes submitted a Request for Reconsideration claiming that his primary diagnosis was not drug and alcohol abuse but a bad back, blurred vision, headache and bad knees. (Tr. 85) Plaintiff was scheduled for a hearing before a Disability Hearing Officer ("DHO") on April 11, 1997 but he failed to appear. (Tr. 91- 94) By Notice dated May 6, 1997, plaintiff's Request for Reconsideration was denied. (Tr. 96-102)  In this decision, the hearing officer noted that plaintiff was allowed disability benefits effective February, 1991 for alcoholism and substance abuse but the benefits ceased as of February, 1996 based on a determination that plaintiff had improved and that he had no severe physical or mental impairments. (Tr. 100) This decision was based on medical reports which indicated that plaintiff had been sober for eight months in 1995 and was in drug and alcohol abuse recovery. (Tr. 101) Medical records in 1996 showed that plaintiff was using insulin to control diabetes and had some decreased movement of the lower back from

pain. However, he could walk normally and showed no muscle wasting nor decreased muscle strength. (Tr. 101)

Plaintiff filed a request for a hearing before an ALJ on June 9, 1997. (Tr. 108) A hearing scheduled before an ALJ on September 2, 1998 was postponed and a second hearing was scheduled for October 8, 1998. (Tr. 337)  In his decision dated March 25, 1999, the ALJ concluded that plaintiff was no longer disabled. Plaintiff requested a review which was denied on December 29, 2000. (Tr. 6-7) Plaintiff commenced an action in federal court on October 22, 2001 claiming that he is still disabled based on Reiter's Syndrome, joint pain, and depression.  By stipulation of the parties, the District Court vacated the decision and remanded the case for further proceedings. (Tr. 389, 456) A hearing was held on May 14, 2002 at which plaintiff appeared represented by counsel. (Tr. 390) The ALJ issued a decision on July 25, 2002 in which he found that plaintiff was not disabled. (Tr. 403-413) Holmes commenced this action on November 23, 2004.

A.  Medical Background

On March 13, 1987, Holmes presented himself to Genesee Hospital with pain in the face and swelling of the lips lingering from injuries sustained in a car accident in January. (Tr. 170) He was given Tylenol and referred to Dr. Drampour for an appointment. (Tr. 170) On March 17, 1988, plaintiff appeared at the emergency room of Genesee Hospital because he was unable to sleep and was

"seeing things." (Tr. 171) He admitted to using cocaine that morning as well as the day before with alcohol. He expressed an interest in discontinuing the use of cocaine and alcohol. When examined by a psychiatrist, Holmes admitted that he had an alcohol dependence problem since 1971 and was snorting cocaine for the past two years. (Tr. 172) Holmes was referred to the Norris Clinic fo April 26, 1988. (Tr. 171)

Plaintiff was admitted to the Norris Clinic on April 26, 1988 for his first inpatient treatment program. (Tr. 174) Holmes began drinking at the age of 19 and increased to daily drinking while in the Marine Corps. He attributed his problems of loss of jobs, domestic troubles, depression and a DWI accident in January 1987 with drinking. (Tr. 174) He drank one pint of gin and 12 packs of beer several times a week resulting in blackouts and hallucinations at times. (Tr. 174) He began using cocaine at the age of 21 increasing to daily snorting in 1987. (Tr. 174) He smoked cocaine heavily two to three times a month causing hallucinations, depression, nervousness and jitteriness. (Tr. 174) Plaintiff completed the recovery program at Norris Clinic and was discharged on June 13, 1988. (Tr. 175) A psychiatric evaluation during his stay showed that Holmes had "no significant depression, psychosis or organic brain impairment." (Tr. 175) He demonstrated growth in his ability to express feelings during the course of treatment. (Tr. 176)

Holmes presented to Genesee Hospital with a swollen right hand on September 18, 1988. Because no fracture was found, Holmes was advised to elevate the hand, take pain reliever, and follow up with Dr. Ray in two days. (Tr. 177) On November 5, 1988, Holmes was treated at Genesee Hospital after suffering a stab wound with a steak knife and bite marks during a domestic dispute. (Tr. 179) Plaintiff received stitches and instructed to keep the wound clean. (Tr. 179)

On behalf of the New York State Department of Social Services Office of Disability Determinations, Dr. Mark Klein gave Holmes a psychiatric examination on April 26, 1989. (Tr. 180) Dr. Klein noted plaintiff's history of cocaine and alcohol use. Specifically, he recounted that plaintiff had been using cocaine and alcohol at the time that he had killed the man he found in bed with his wife. (Tr. 180) In addition, in his 1987 motor vehicle accident, Holmes had been drinking heavily. (Tr. 180) Holmes told Dr. Klein that he had lost his jobs in the past because of depression and headaches. (Tr. 181)

Dr. Klein reported that Holmes' physical health was generally adequate with some reports by Holmes of pain in the knees, back and cramping in the abdomen. (Tr. 181) Dr. Klein noted that plaintiff spent his days at home lying on the couch having his fiancé take care of him. (Tr. 181) Dr. Klein diagnosed plaintiff with "depressed mood" and alcohol dependence. (Tr. 181) He suggested

that plaintiff enter psychiatric treatment as well as pain treatment at the Pain Clinic at Strong Memorial Hospital for ongoing headaches and other pain related to prior accidents. (Tr. 181-182)

On May 1, 1989, plaintiff was examined by Dr. Charles Avallone, a cardio-pulmonary specialist. (Tr. 183-185) Holmes told Dr. Avallone that he attended NA and AA meetings two to three times each week and that he had not had a drink for the past nine months. (Tr. 183) Holmes complained of pain in the jaw, decreased range of motion and difficulties chewing as a result of injuries sustained from the automobile accident in 1987. (Tr. 183) He also complained of pain in the lower back and knees since the accident. Dr. Avallone found that plaintiff continued to have pain in his fingers and a decreased range of motion in his jaw. Also, plaintiff continued to experience headaches. (Tr. 185) Although Dr. Avallone noted that plaintiff had some stiffness to the lower back and knees, plaintiff's range of motion was good and there was no evidence of root irritation. (Tr. 185)

Holmes was admitted to the V.A. Medical Center in Canandaigua, New York on July 6, 1989 for cocaine and alcohol dependence. (Tr. 188) Holmes attended AA and NA meetings, routine lectures and AV presentations and received psychiatric and psychological evaluation and group therapy. (Tr. 189) He was discharged on August 2, 1989 and was referred to out-patient occupational therapy. (Tr.189)

6

Medical notes indicate that Holmes started "aftercare" group therapy which was to meet weekly on March 6, 1990. (Tr. 322) Holmes missed most of his meetings for the months of March and April and did not attend any meetings in May and was finally dropped from the program on May 30, 1990. (Tr. 324)

Holmes was again admitted to the V.A. Medical Center for alcohol, cocaine and marijuana dependency on April 6, 1992. (Tr. 215) Holmes sought treatment because he was experiencing blackouts, shakes, hallucinations, paranoia, missing meals, sleep disturbances and stomach upset. (Tr. 216) After completing all phases of the treatment program, he was discharged on May 4, 1992 and was expected to reside at the VOA in Rochester, New York. (Tr. 219, 326)

Holmes again sought treatment for substance abuse several months later on August 20, 1992 at the V.A. Medical Center in Bath, New York. (Tr. 242) He was discharged one week later after treatment for substance abuse and stabilization of diabetes. (Tr. 242) On August 28, 1992, plaintiff was admitted to the Chemical Dependence Unit of the medical center. (Tr. 245) Plaintiff claimed to have poor health suffering from diabetes as well as liver and pancreas problems. (Tr. 252) Plaintiff was referred for a CT and neurological consultation regarding ongoing head pain and right sciatic pain. (Tr. 267) The radiology report indicated that lumbar bodies and interspaces were satisfactory and there was "minimal

degenerative changes of L-4 and both the right and left hips." (Tr. 269) Similarly x-rays taken of the right tibia and fibula were "satisfactory." (Tr. 270)  Upon discharge, Holmes requested placement in a halfway house because he was homeless and unemployed. (Tr. 259)

A "Mental Residual Functional Capacity Assessment" of Holmes dated December 9, 1992 indicated that he was not significantly limited in his ability to remember locations and work-like procedures nor in the ability to understand and remember very short and simple instructions.  However, he was found to be moderately limited in his ability to understand and remember detailed instructions. (Tr. 275) Similarly, he was found moderately limited in his ability to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them and the ability to make simple work related decisions. (Tr. 275) He was found to be "markedly limited" in his ability to complete a normal workday and workweek without interruptions. (Tr. 276) Holmes was described as dependent on alcohol and drugs and unable to maintain sobriety despite repeated rehabilitation attempts.  (Tr. 277)

Outpatient notes from the V.A. Outpatient Clinic in Rochester, New York dated September 12, 1994 report that plaintiff had been non-compliant since January of 1994 by failing to go to appointments. (Tr. 288) The clinic refused to refill medications

until Holmes is examined by a physician. (Tr. 288) Records from New York State Department of Social Services, office of Disability Determination dated September 5, 1995, indicate that plaintiff had been sober for eight months with the help of people in A.A. (Tr. 295)

On February 15, 1996, Dr. John Davis wrote a disability determination on Holmes in which he concluded that Holmes had insulin dependent diabetes without complications. (Tr. 298) Further, plaintiff was found to be able to dress and undress independently and had a normal gait. (Tr. 298) At that time no limitations were found regarding plaintiff's activities of daily living, maintenance of social functioning, concentration nor deterioration in work or work-like settings. (Tr. 306)

Holmes was again admitted to the V.A. Medical Center in Bath, New York on March 14, 1997. (Tr. 308, 344) He was treated for alcohol and drug abuse, diabetes and low back pain. (Tr. 344) He was discharged September 2, 1997. (Tr. 317, 344)

Holmes was treated as an outpatient at the V.A. Medical Center throughout 1998 and 1999 for pain in the face and knees, back pain, diabetes and Hepatitis C and Hepatitis B. (Tr. 461-471) Plaintiff was treated with prescription medications for these ailments however doctors expressed concern that plaintiff was not taking his medications properly. (Tr. 467) Holmes continued to be treated as an outpatient throughout 2000. He began to experience new problems

with prostatitis and increased lower back pain. (Tr. 471-487) Plaintiff was treated with both medications and physical therapy.

On February 28, 2001, plaintiff sought treatment for frequent falls at home because of weakness in his legs. (Tr. 491) Medical records indicate that the falls were occasioned by diabetic neuropathy. In April, 2001, plaintiff was also found to have "significant osteoarthritis of the spine, hips and knees." (Tr. 492) He was taking prescription medication, Darvon, for pain and was advised on glucose control. (Tr. 492)

On August 9, 2001 plaintiff was tested positive for Hepatitis B and had a high sensitivity for Hepatitis C. (Tr. 497) Medical notes suggest that Holmes was on several medications but had been noncompliant. (Tr. 498) Although he did not drink alcohol nor use cocaine anymore, he smoked cigarettes and did not regularly take the medications prescribed for diabetes and high blood pressure. (Tr. 498) Throughout the year 2001, plaintiff was treated for poorly controlled diabetes, peripheral neuropathy, diabetic neuropathy, diffuse degenerative osteoarthritis, and diabetic complications including mild nephropathy and retinopathy. (Tr. 502) In addition, he had been having persistently elevated liver functions and was treated for pain related to his automobile accident in 1987. (Tr. 502)

By February 14, 2002, the medical notes indicate the plaintiff had developed a dependency on Darvocet. (Tr. 509) He was also

experiencing depressive symptoms including irritability, poor concentration, amotivation and inertia. (Tr. 510)

On September 28, 2001, Dr. Saroja Reddy of the VA Medical Center in Bath, New York, completed a Medical Source Statement regarding Holmes. (Tr. 535-542) In it Dr. Reddy described plaintiff as having poorly controlled diabetes, hepatitis C, peripheral neuropathy, low back pain with a "guarded" prognosis. (Tr. 535) Dr. Reddy noted that plaintiff experienced headaches and pain in his face. He also had trouble walking because of knees that "gave out" as he walked. (Tr. 535) Dr. Reddy noted that the impairments could be expected to last at least twelve months and the impairments were reasonably consistent with the symptoms experienced. (Tr. 536) Dr. Reddy noted that plaintiff experienced pain "constantly" and was "markedly limited" in his ability to deal with work stress. (Tr. 537) Holmes was described as able to sit for 45 minutes at one time and stand for 20 minutes at one time. (Tr. 537) He could sit and stand a total amount of time in an eight hour day less than two hours. (Tr. 537) He could not lift or carry even less than ten pounds. (Tr. 538) Dr. Reddy concluded that plaintiff was "totally disabled." (Tr. 540)

B.  <u>Non-Medical Background</u>

Holmes is a 54 year old male with a high school diploma and an additional two years of college. (Tr. 174) Holmes served in the military from March, 1971 through March, 1974. (Tr. 114) After an

honorable discharge, he worked as a baker for three years until he was incarcerated in 1978 for killing a man. (Tr. 114, 174) After his release from jail, Holmes worked restocking dairy products in refrigerators at a milk cooperative for eight years and as a nurse's aide where he made beds, fed and bathed patients and cleaned rooms for one year. (Tr. 114-116)

At the time he completed the disability claim questionnaire on April 19, 1989, plaintiff was living with his fiancee who did all the grocery shopping for him as well as cleaning. (Tr. 124) Holmes was able to travel by bus without assistance. (Tr. 125) On May 26, 1992, plaintiff completed the same disability claim questionnaire in which he stated that he lived at the V.O.A., did his own grocery shopping with some assistance, attends Narcotics Anonymous and Alcoholics Anonymous meetings, visit with friends, watch television and play cards. (Tr. 133) Holmes also worked at the V.A. Hospital from April, 1990 until February, 1991 but claimed that it caused headaches and stress. (Tr. 135)

By June 26, 1992, Holmes was living by himself in an apartment. (Tr. 136) He shopped and cooked with assistance from friends. (Tr. Tr. 136) Holmes was able to perform housekeeping chores at that time. He spent his days listening to the radio and watching television and playing games with friends. (Tr. 136-137) In October, 1992, Holmes wrote that he was able to carry out light household cleaning chores without assistance on a New York State

Department of Social Services Disability form. (Tr. 140) He also noted that he was able to use public transportation. (Tr. 141) By August 31, 1995, Homes was renting a room and employed a friend to clean, cook and take care of him. (Tr. 293)

On April 6, 1995, Holmes completed a report in support of his request for reconsideration of the cessation of disability benefits. In this report, Holmes claimed that his knees hurt and that the frequency of his headaches had increased. (Tr. 145) In a similar form dated July 29, 1995, Holmes noted that he lived by himself and employed a person to do his shopping, cooking and cleaning. (Tr. 151)

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. <u>Rivera v. Harris</u>, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not

disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to sue the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. <u>Bush v. Shalala</u>, 94 F.3d 40, 44-45 (2d Cir. 1996).

After an individual has been found entitled to such benefits, his entitlement is periodically reviewed. 42 U.S.C. § 421(I). His benefits may be terminated if there is substantial evidence that there has been an improvement in the recipient's medical condition relating to his ability to work and that the recipient has regained his ability to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1). The relevant inquiry is whether there has been an objective decrease in the severity of the recipient's condition since the most recent medical determination that he was disabled or continued to be disabled. 20 C.F.R. §404.1594(b)(1), (b)(7), (c)(1). If there has been medical improvement in the impairment, the Commissioner must then determine whether the medical improvement is related to the plaintiff's ability to work, that is the improvement results in an increase in the plaintiff's functional capacity to perform basic work activities. 20 C.F.R. §404.1594(a), (b)(3). Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, pushing, pulling, reaching, carrying, hearing, speaking, remembering, and using judgment. 20 C.F.R. §404.1594(b)(4).

Here, the ALJ followed the five step procedure. In his decision dated , the ALJ found that plaintiff (1) had not engaged in substantial gainful activity since the date of disability December 17, 1982; (2) that plaintiff had diabetes mellitus with peripheral neuropathy, a depressive disorder and a personality disorder that were severe; (3) did not have an impairment listed in Appendix 1, subpart P, Regulation No. 4; (4) had medical improvement in his impairments which existed on November 13, 1993; (5) did have the residual functional capacity to lift and carry up to 30 to 35 pounds occasionally and 20 pounds frequently, sit up to six hours and stand and walk up to six hours in an eight hour day.

In addition, plaintiff was found to have a moderate limitation in his ability to accept instructions and handle criticism from supervisors and had poor impulse control and poor judgment; and (6) had the residual functional capacity to perform his past relevant work as a machine operator. (Tr. 412)

The ALJ used the decision of November 13, 1993 as the comparison point in evaluating the medical improvement in plaintiff. (Tr. 21) The ALJ concluded that "there is no evidence of continued limitation from drug and alcoholism or any other cause at the point of cessation. Therefore, medical improvement is found to have occurred." (Tr. 410) The ALJ relied upon the medical records which showed that plaintiff's recovery from substance abuse was going well. Plaintiff admitted that he had no counseling in 1996 and couldn't remember if there was any treatment in 1995. (Tr. 409) At the hearing, plaintiff denied drinking and drugs in 1996 and there were no records of medical treatment until 1997 (Tr. 409) The ALJ dismissed plaintiff's complaints of limitations because if the absence of medical treatments until 14 months after the cessation of benefits. (Tr. 409)

Plaintiff contends that the Commissioner erred in finding that Holmes' diabetes mellitus did not meet Listing 9.08 as of the cessation date and that Holmes' back problems, headaches, knee problems, arthritis and post-traumatic stress disorder were non-severe impairments. In addition, plaintiff argues that the ALJ

erred in failing to follow the treating physician rule, did not provide medical support for his finding of plaintiff's residual functional capacity and failed to properly analyze plaintiff's credibility.

At the time of cessation of benefits, indeed, throughout 1996 and into 1997, the medical records demonstrate that plaintiff's medical condition had significantly improved. Plaintiff was found to be disabled in 1993 based on drug and alcohol abuse. Dr. Davis specifically found in February, 1996, that his examination of plaintiff showed "no physical findings to support his multiple symptoms to support disability." (Tr. 298) Similarly, medical records for Holmes dated May 2, 1997 specifically state the plaintiff's alcohol and cocaine dependence were "in remission." (Tr. 311) Although plaintiff was diagnosed at this time with diabetes, it was "without physical evidence of complications." (Tr. 298)

The ALJ correctly found that the medical improvement at this time was related to plaintiff's ability to work. (Tr. 406) This finding is supported by the evidence indicating that there was an increase in plaintiff's mental ability to perform work related activities as detailed by the state medical consultant who had examined plaintiff at that time. (Tr. 275-277) Indeed, there is no evidence in the record to the contrary during this time period. Plaintiff's testimony in October, 1998 confirms that the more

debilitating symptoms of pain in the knees and peripheral neuropathy associated with diabetes did not arise until 1998. (Tr. 44-64)

Finally, plaintiff argues that the ALJ failed to properly weigh the medical opinion of his primary physician, Dr. Reddy. The opinions of treating sources are only entitled to controlling weight if they are well supported and not contradicted. 20 C.F.R. §§ 404.1527 and 416.927. Dr. Reddy rendered an opinion that plaintiff was totally disabled in September, 2001, years after the relevant time period and at a time when the medical records indicate that plaintiff had a very different medical symptoms and diagnoses than he had in 1996. By 2001, plaintiff had poorly controlled diabetes, hepatitis C, peripheral neuropathy, low back pain, headaches, pain in his face and trouble walking because of knees that "gave out." (Tr. 535) Although Dr. Reddy checked "yes" to the question as to whether plaintiff's condition existed since February 11, 1991, it was proper for the ALJ to disregard this opinion because Dr. Reddy did not treat plaintiff until 1997 and the medical records do not support a finding that plaintiff suffered from these conditions prior to that time. (Tr. 438)

I am troubled, however, with the ALJ conclusion that plaintiff had the residual functional capacity to perform his past relevant work as a machine attendant because the record does not establish that plaintiff had ever worked as a machine operator. The record

18

establishes past work as a nurse's aide, a baker and a re-stocker of shelves. Therefore, this case is remanded for further administrative proceedings to determine Holmes' ability to perform his past work.

## CONCLUSION

I find there is not substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the case is remanded to Commissioner for further proceedings in accordance with this Decision and Order pursuant to 42 U.S.C. §405(g).

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         March 14, 2006

19